IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| Gary D. Fielder, | **10 CV 2878** JLK-BNB |
| Plaintiff, | |
| vs. | |
| JANET NAPOLITANO, in her official capacity as Secretary of Homeland Security, | **FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND REQUEST FOR PERMANENT RESTRAINING ORDER** |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, an agency of UNITED STATES OF AMERICA | |
| JOHN S. PISTOLE, in his official capacity as Administrator of Transportation Security Administration, | |
| TRANSPORTATION SECURITY ADMINISTRATION, an agency of UNITED STATES OF AMERICA | |
| Defendants. | |

**COMES NOW** the Plaintiff, Gary D. Fielder, a natural person, by and through The Law Office of Gary D. Fielder, Attorney at Law, and for his Complaint, states and alleges as follows:

## INTRODUCTION

Gary D. Fielder, in his individual capacity, brings this action under the Fourth Amendment to the Constitution of the United States of America to enjoin certain agencies of UNITED STATES OF AMERICA, namely, DEPARTMENT OF HOMELAND SECURITY and TRANSPORTATION SECURITY ADMINISTRATION, and its chief

1

executive officers, respectively, from continuing to unreasonably search the people of the United States of America through the use of whole body imaging scanners and enhanced "pat down" procedures before boarding a commercial aircraft.

Currently, there are over 330 million citizens of the United States, none of whom have ever engaged in any terrorist activity onboard a commercial airliner, at any time or place on the planet Earth.  Despite that fact, DEPARTMENT OF HOMELAND SECURITY and TRANSPORTATION SECURITY ADMINISTRATION have turned their effort to "keep us safe," not on terrorists (who from time-to-time threaten the security of the nation), but on its people—who throughout history have shown and established a collective spirit to care for itself and specifically _not_ terrorize others in or outside of the country.

The terrorist's job is to terrorize the people—to interfere with freedom in such a way that disrupts ordinary life and commerce.  With due respect, it is clear that the above referenced governmental agencies are aiding the terrorists' objective to: fear monger, disrupt travel, cause great expense, pit the people against one another, restrict commerce, destroy our freedom, and (through the photographing and touching of our private areas) infuse the people with negative, and quite literally, radioactive energy.

Accordingly, it is with great sadness and much reservation that one citizen stand-up to the most powerful country in the world to ask that it be enjoined by this Honorable Court from unreasonably searching one of its own, when no reasonable and articulable basis exist to go beyond the use of conventional and time-tested methods of metal and contraband detection.

**PARTIES**

1. The Plaintiff, Gary D. Fielder (hereinafter referred to as "Mr. Fielder"), is a natural person, over eighteen years of age.

2. At all times material hereto, Mr. Fielder was a domiciliary, resident and Citizen of the state of Colorado, a state within the United States of America.

3. Defendant, JANET NAPOLITANO (hereinafter referred to as "Secretary Napolitano"), in her official capacity, is Secretary of DEPARTMENT OF HOMELAND SECURITY.

4. Defendant, DEPARTMENT OF HOMELAND SECURITY (hereinafter referred to as "DHS"), is a department of the Executive Branch of UNITED STATES OF AMERICA, and an agency of UNITED STATES OF AMERICA.

5. Defendant, JOHN S. PISTOLE (hereinafter referred to as "Mr. Pistole"), in his official capacity, is Administrator of TRANSPORTATION SECURITY ADMINISTRATION.

6. Defendant, TRANSPORTATION SECURITY ADMINISTRATION (hereinafter referred to as "TSA") is a sub-agency and component of DHS.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 28 U.S.C. § 1391(b), as the District of Colorado is the judicial district in which Mr. Fielder resides.

## FACTUAL ALLEGATIONS

9. The Fourth Amendment to the Constitution of the United States of America states:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

10. The people of the several states hold the sovereignty of the United States of America in joint tenancy.

11. Mr. Fielder is one of the people.

12. On October 8, 2010, Mr. Fielder and his two female children, ages 9 and 15, flew on a commercial airline from Denver, Colorado, to San Diego, California.

13. Mr. Fielder's eldest daughter was accompanied by a female friend, also 15 years of age.

14. Before departing from Denver International Airport, the Fielder family and friend were required to enter the airport's security checkpoint, administered by TSA.

15. Mr. Fielder was familiar with this particular checkpoint.

16. Mr. Fielder has flown on commercial airlines consistently for 40 years.

17. At the Denver International Airport on October 8, 2010, there was one line for every potential passenger, in which to wait before screening.

18. After waiting for approximately 20 minutes, before screening, Mr. Fielder was asked by a TSA agent to produce a boarding pass and acceptable identification.

19. Mr. Fielder willing complied and produced the necessary documents to the satisfaction of the requesting TSA agent.

20. Mr. Fielder was not, is not and never has been on the TSA "No-Fly" list.

21. Mr. Fielder had no warrants for his arrest.

22. Mr. Fielder was not engaging in any criminal activity.

23. After the above described encounter, Mr. Fielder was presented with two lines from which to choose to participate in the screening process.

24. One line required potential passengers, among other things, to submit to the use of a Whole Body Imaging ("WBI") scanner.

25. The other line required potential passengers to walk through a conventional metal detector.

26. The Fielder family and friend consciously chose the line with the conventional metal detector.

27. After removing his shoes and personal effects, Mr. Fielder placed said items (including carry-on baggage and laptop computer) in a number of plastic containers and walked through the metal detector without triggering the alarm.

28. The Fielder family and friend then proceeded to their flight without incident.

29. Mr. Fielder was attending his 20 year law school reunion at the University of San Diego School of Law.

30. While in San Diego, the Fielder family and friend also enjoyed beautiful weather, a resort hotel and the local attractions, including Sea World Park.

31. On October 11, 2010, Mr. Fielder and the children were scheduled to return to Denver, Colorado, again by flight on a commercial airline.

32. The Fielder family and friend arrived at San Diego International Airport approximately two hours before departure.

33. Having lived in San Diego for some time, and having visited the city on occasion since graduation, Mr. Fielder was familiar with the airport and its security screening.

34. As in Denver, before the security screening, an agent from TSA requested proper identification and a boarding pass before allowing Mr. Fielder to proceed to the security screening area.

35. As before, Mr. Fielder consented to the request and provided the necessary documentation.

36. After being cleared to continue to the security screening area, Mr. Fielder again willingly complied with the screening regulations, which included the placement of his footwear and all personal items into separate plastic buckets.

37. After loading said personal effects and footwear into buckets and placing them on the x-ray scanner belt, Mr. Fielder had three items on his person: Shorts, underwear and a tee-shirt.

38. Unbeknownst to Mr. Fielder, security at the San Diego International Airport, administered by TSA, had installed a number of WBI scanners, and now required all potential passengers to either submit to a whole-body scan, or an enhanced pat down screening regime.

39. Upon being informed by a TSA agent to enter the WBI scanner, Mr. Fielder, on behalf of himself and his children, declined.

40. Immediately thereafter, Mr. Fielder and all three children were led to an area beyond the WBI scanner.

41.   After being led to the area, Mr. Fielder was informed that he and the children would have to submit to a full-body, pat down before being allowed to get on the plane.

42.   Mr. Fielder objected and advised the TSA agents that he did not wish to be touched by agents of TSA and most certainly did not want the children to be touched.

43.   Mr. Fielder was advised that neither he nor the children would be allowed to get on the plane and return home.

44.   Mr. Fielder did not have decision making authority on behalf of his daughter's friend.

45.   Mr. Fielder's cell phone was in the possession of TSA agents.

46.   Accordingly, Mr. Fielder could not consult with the parents of his daughter's friend to determine whether they wished to either have their daughter submit to a WBI scan, searched by TSA agents, or remain in San Diego, alone.

47. Under great duress, Mr. Fielder acquiesced to having his person and that of the children searched by agents of TSA.

48.   During the search, which lasted for approximately two minutes, a male in TSA uniform with rubber gloves, literally rubbed his hands all over Mr. Fielder's body, including his breasts, buttocks, and pelvic area, twice touching Mr. Fielder's genital area while rubbing his legs.

49.   The TSA agent discovered nothing illegal on the person of Mr. Fielder.

50.   While Mr. Fielder was being rubbed all over his body by a male stranger, his children stood by and watched.

51.   Mr. Fielder's children were also "searched" by adult, female agents of TSA.

52. Throughout the entire process, Mr. Fielder voiced his objection.

53. Mr. Fielder advised the TSA agents that their behavior was disgusting, unconscionable, sexual in nature, unnecessary and a complete violation of his and his children's constitutional rights.

54. During the encounter, Mr. Fielder advised the TSA agents that this was the last time he would ever submit to such a degradation of his rights and that if their policy did not change, he would file for an injunction in federal court.

55. After the above described encounter, Mr. Fielder was extremely distraught and embarrassed by the violation of his person, and that of his children, by agents of TSA.

56. Mr. Fielder's memories of his family vacation and class reunion have been forever marred by the policy and actions of the Defendants and their agents.

57. Since the recent change in DHS and TSA policy requiring travelers, for a variety of reasons, to be subject to "enhanced pat downs," there has been a national outcry.

58. Since the beginning of November 2010, the mainstream and alternative media have continuously reported on this story.

59. The DHS and TSA continue to openly defy the will of the people and insist that their policy of body scanning and enhanced pat downs will not change—except for maybe the pilots who are actually flying the plane.

60. Secretary Napolitano has repeatedly mentioned in the public media that the need to ensure the safety of passengers outweighs privacy concerns.

61. As grounds for this enhanced security, Secretary Napolitano continuously references the tragedy of September 11, 2001, the failed attempt by Richard Reid to ignite his shoes, and the most recent attempt by Umar Farouk Abdulmutallab to detonate an explosive device concealed in his underwear.

62. None of the terrorists in the above-referenced examples were citizens of the United States.

63. Never has one of the people of the United States engaged in terrorism on a commercial airline at any time, in any part of the world.

64. Mr. Fielder has an unalienable right to move freely between the states.

65. Unlike operating a motor vehicle or flying a plane, no license is required to be a passenger in an automobile or commercial airliner.

67. Mr. Fielder has an unalienable right to engage in interstate commerce.

68. Mr. Fielder has an unalienable right to be free from unreasonable search and seizure.

69. Conversely, not all persons comprise the people of the United States.

70. Artificial persons, such as corporations, do not constitute a part of the people of the United States.

71. With all due respect, foreigners, and illegal and/or legal aliens, do not comprise any portion of the people of the United States.

72. Secretary Napolitano has authority over TSA policies and procedures related to airport security measures, including those challenged in this Complaint.

73. Mr. Pistole has authority over TSA policies, procedures and practices related to airline and airport security measures, including those challenged in this Complaint.

74. After the election of President Barack Obama, in the spring of 2009, DHS determined that WBI scanners would be utilized in the future as the primary screening technique in airports across the United States.

75. DHS has rapidly deployed WBI scanners in airports throughout the country.

76. By the end of 2010, close to 500 WBI scanners will be deployed in U.S. airports.

77. By the end of 2011, over one thousand WBI scanners will be employed in every major airport across the nation.

78. WBI scanners expose, photograph and store the naked image of the subject, including the detailed contours of the person's intimate parts.

79. WBI scanners used by DHS and TSA are of two types: Those that use millimeter wave technology and those that use backscatter X-Ray.

80. Upon information and belief, the use of said devices carries certain health risks associated with exposure to radiation.

81. By offering an alternative to the WBI scanner, DHS and TSA tacitly concede that the use of said WBI scanners requires the consent of the passenger.

82. In some airports, under new TSA procedures, if a person declines to be subject to a WBI scanner, i.e., "opt out," that person must be subjected to an "enhanced pat down."

83. The enhanced pat down requires a passenger, child or adult, to stand with arms extended while a TSA agent uses his or her palms, hands and fingers to conduct a detailed inspection of the passenger's whole body, including the breasts, buttocks, and pubic area.

84. Upon information and belief, since beginning these new enhanced security measures, not one person who constitutes a portion of the people of the United States has been found to have a weapon or explosive device.

85. Upon information and belief, since 2001, not one person who constitutes a portion of the people of the United States has engaged in any terrorist activity which threatens the lives or safety of anyone flying on a commercial airline.

86. Upon information and belief, DHS and TSA have consciously decided to only allow for an enhanced pat down as an option to the WBI scanner, specifically, making it so uncomfortable to endure the hands-on search that passengers consent to the otherwise unconstitutional use of the WBI scanner.

87. The above referenced procedures are intrusive and an assault on the people's personal liberties, including but not limited to, an individual's right to travel, right to privacy and right to engage in interstate commerce, all while free from unreasonable search and seizure.

## COUNT I

## REQUEST FOR INJUNCTIVE RELIEF

88. Plaintiff incorporates by reference each and every allegation contained above as though fully contained herein.

89. An actual and immediate controversy has arisen and now exists between Mr. Fielder and the Defendants.

90. As alleged, the Defendants have violated, and continue to threaten the unalienable and constitutional rights of Mr. Fielder.

91. Other than the request for this injunction, there is no adequate remedy at law.

92. The Defendants have acted, and continue to act, to deprive Mr. Fielder of his unalienable and constitutional rights.

93. Mr. Fielder is suffering and will continue to suffer irreparable harm and injury as a direct result of the policies and procedures as described in this Complaint, unless those policies and procedures are enjoined by this Court.

94. Mr. Fielder has no administrative remedy, as Defendants' policies and procedures preclude any administrative determination for affording actual relief.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully request that the Court:

1. Permanently enjoin the Defendants from requiring Mr. Fielder to be screened by a WBI scanners at airport security checkpoints without the express consent of Mr. Fielder;

2. Permanently enjoin the Defendants from requiring Mr. Fielder, if he should decline to be subjected to a WBI scan, to be touched at any airport security checkpoint by any agent of the U.S. Government to effectuate a search upon his person, without his express consent, a Warrant, or the establishment of articulable, reasonable suspicion or probable cause that criminal activity is afoot.

3. Require the Defendants to immediately remedy the Fourth Amendment defects in their security policies and procedures as currently promulgated by the Defendants;

4. Award Plaintiff's costs and reasonable attorney fees pursuant to 28 U.S.C. Section 2412, or other applicable law.

5. Grant such other and further relief as the Court deems just and proper.

Dated this 26th day of November, 2010.

s/ *Gary D. Fielder*  
Gary Fielder, 19757  
5777 Olde Wadsworth  
Suite R-700  
Arvada, CO 80002  
(303) 650-1505  
fax (303) 650-1705  
garyfielder@earthlink.net